[No. 2,713.]

## C. G. MEYERS v. JOHN FARQUHARSON, ET AL.

BILL OF SALE OF MINING CLAIM. — No precise form of words is necessary to work a conveyance in a bill of sale for a mining claim. If it be clear from the language of the instrument that the maker intended to pass thereby the title to the property, the law will, if possible, so construe the words used as to effectuate that intent.

DESCRIPTION IN A CONVEYANCE. — A conveyance of land· is not void on its face for uncertainty in the description of the property sold, if so far as can be seen from the description itself, the points named as boundaries, may be well known monuments, easily found.

GIFT OF A MINING CLAIM.—The owner of a mining claim may give away the same by a written bill of sale, and such bill of sale is not to be rejected as evidence because it was a gift.

TITLE ACQUIRED UNDER PROBATE SALES.—If a claim secured by a mortgage made by the decedent during his life, is allowed by his executors, and the mortgaged property is sold by them, and the proceeds are applied on the claim, and the sale is approved by the Probate Court, the purchaser does not take by relation the title which the mortgagor had at the date of the mortgage, but only such title as the mortgagor had at the time of his death, and such as the estate may have subsequently acquired.

SALE BY PROBATE COURT.—A sale by the Probate Court to satisfy a claim against the estate, secured by a mortgage made by the testator, is not in effect a foreclosure of the mortgage.

PROBATE COURT.—A Probate Court is not a Court of equity and has no power to foreclose a mortgage.

CONVEYANCE WITHOUT CONSIDERATION.— The title of one who obtains a conveyance without any consideration cannot be assailed by another who is neither a creditor of the grantor nor in the place of a creditor.

TRESPASS FOR ENTRY UPON LAND.—One who enters wrongfully upon the land of another is a trespasser, and he does not cease to be such so that an action will not lie against him for a trespass, because he is allowed for one month after his entry to remain in the undisturbed possession.

APPEAL from the District Court, Fourteenth Judicial District, County of Placer.

The plaintiff in his complaint averred that in January, 1868, and thence to June, 1869, he had been and still was the owner of, entitled to possess, and in the possession of the mining claim in dispute, and that about the 21st of April, 1870, while he was still the owner of and in possession of the claims, the defendants entered and commenced washing away the earth and gravel, and extracting the gold therefrom. The complaint was filed June 25th, 1870.

The answer not only denied the plaintiff's ownership, but denied that he was ever in possession of the ground in dispute.

The defendants on the trial introduced testimony tending to show that the plaintiff had not been in possession of the ground in dispute, or performed any work thereon since the death of Hudson, on the 18th of April, 1869, and that the

claim had been in the possession of Hudson's executors after his death up to December, 1869, when the executors sold to Burt & Brother, who took possession and retained it until February 2d, 1870, when they sold to defendant Farquharson, who took and had since retained possession.

The defendants, on the trial, offered to prove that in November, 1868, James Hudson being indebted to B. D. Burt and S. B. Burt, executed to said Burts, to secure said debt, a mortgage on the Willow Bar Claims, including the ground in dispute, which was within ten days thereafter recorded in the office of the Recorder of El Dorado County, in which the claims, a part of them, lie; and that said Hudson died in April, 1869, leaving a will, by which he appointed B. D. Dunnam and J. Diltz his executors, and in said will directed his said executors to sell his property and pay his debts; which will was afterwards duly probated in the Probate Court of El Dorado County, of which county said Hudson was a resident when he died; and that afterwards said executors and the Probate Judge allowed said debt as a claim against his estate, and obtained an order of said Court for the sale of said property to pay the debts of the testator, and sold the said mortgaged property; and by an order of said Court the proceeds of sale were applied to said debt thus secured by mortgage, and said Burts became the purchasers, and the sale was approved by said Court; and afterwards, and on the 10th day of December, 1869, said executors executed to said Burts a deed, as executors, under said sale of said Hudson's interest in said property; and said Burts, afterwards, on the 2d day of February, 1870, sold said property, by deed, to Farquharson and Rosetti, who now claim to own the same. Under said deed it was claimed by defendant that this sale by the Probate Court amounted to a foreclosure of said mortgage, and gave said Burts all the title the testator had when he executed the mortgage.

Plaintiff objected to the testimony as irrelevant, and that

the evidence did not show or tend to show that the Burts, by the deed, acquired any title, except what was in Hudson at the time of his death.

The Court sustained the objection, and the defendants excepted.

The Court, in its opinion, has treated the case as though the foregoing evidence had been received by the Court below. The principles involved are not affected however by the manner of treating the case.

The plaintiff recovered judgment, and the defendants appealed.

The other facts are stated in the opinion.

*C. A. Tuttle* and *W. H. Bullock*, for Appellants.

If a claim is secured by mortgage, when the claim is presented for allowance to the executor, the mortgage must also be presented and filed with the claim. (Probate Act, Sec. 133.) This provision in the Probate Act did not exist prior to 1861, consequently it was held prior to this that the mortgage need not be presented as a claim, but could be enforced in equity, and that the word "claims" did not include mortgage liens. (*Fallon* v. *Butler*, 21 Cal. 24.)

It was also held that even if both the debt and mortgage had been presented and allowed as a " claim," the mortgage could still be enforced in equity, but no judgment could be obtained for a deficiency. (*Pechaud* v. *Rinquet*, 21 Cal. 76.)

In *Ellis* v. *Polhemus*, 27 Cal. 354, a majority of the Court seem to hold that *Fallon* v. *Butler* does not state the law in respect to "claims" as correctly as *Ellison* v. *Halleck*, and *Fulkner* v. *Folsom's Executors*, which it overrules. It may now be safely stated that since the amendment of 1861 to the one hundred and thirty-third section of the Probate Act, that a mortgage is a "claim," and must be presented for

allowance. We do not claim that a Court of equity can no longer foreclose a mortgage, but admit that it has jurisdiction to do so. The mortgage in *Ellis* v. *Polhemus* was given in 1862.

In *Belloc* v. *Rogers,* 9 Cal. 128, Mr. Justice BURNETT says, in discussing a claim against an estate secured by mortgage: "But suppose the administrator and the Probate Judge had allowed the claim of the plaintiff, would it have been then necessary to go into the District Court to procure a valid sale? And if a sale had been made by the order of the Probate Court, would not the purchaser have obtained the title the mortgagor had at the date of the mortgage? The true theory would seem to be that a sale by an administrator or executor is made for the benefit of all the creditors, and in the order of their respective priorities; and that in contemplation of the Act the title existing in the testator or intestate at the time he executed the mortgage, or suffered the judgment, still continued in the deceased at the time of his death, for the purposes of administration, and passes to the purchaser under the probate sale."

In the above case the "title of the mortgagor had passed to a third person before his death."

In *Falkner* v. *Folsom's Executors,* 6 Cal. 412, where a claim secured by mortgage had been allowed by the executors and Probate Judge, and the mortgagee then filed his bill to foreclose, the Court held that the allowance of the claim had the effect of a judgment, and that there was no necessity for the suit.

In *Fallon* v. *Butler, ante,* this last decision is questioned, but it is not intimated but that the allowance of the claim had the effect of a judgment; nor is it questioned but that a sale in the Probate Court would carry the title of the mortgagor which he held at the date of the mortgage.

This Court seems uniformly to have held that the allowance of a claim had the effect of a judgment. *(Deck's Estate*

v. *Gherke*, 6 Cal. 666; *Estate of Hidden*, 23 Cal. 262; *Pico* v.
*De La Guerra*, 18 Cal. 422; *Estate of Martin E. Cook*, 14
Cal. 129.)

The question then is, does the Constitution prohibit the
Legislature from providing that an executor's sale shall carry
the interest the mortgagor had when he gave the mortgage?
It seems to me that the one hundred and thirty-third and
one hundred and eighty-sixth sections of the Probate Act
were intended by the Legislature to have that effect. The
proceeding to sell property is in the nature of an action.
The presentation of the petition to sell is the commence-
ment of the action; and the order of sale is the judgment.
(*Estate of Spriggs*, 20 Cal. 121.) The publication of notice
brings in all persons interested and makes them parties.

The Constitution, section eight, Article VI, says: "The
County Judges shall also hold in their several counties Pro-
bate Courts, and perform such duties as Probate Judges as
may be prescribed by law." It is true, section six gives the
District Courts original jurisdiction in all cases in equity,
but this grant does not preclude the Probate Court from ex-
ercising concurrent jurisdiction in certain cases, provided it
has been granted. (*Courtwright* v. *Bear River Co.*, 30 Cal.
573.)

The Probate Judges perform such duties as may be pre-
scribed by law. When the law says the mortgage must be
presented and the proceeds of sale applied to its satisfac-
tion, why is it not in effect a foreclosure? A foreclosure is
only an ascertainment of the amount due, with a direction
that the mortgaged premises be sold and the proceeds applied
to the payment of the debt. (*Leviston* v. *Swan*, 33 Cal. 480.)

This was an action of trespass on real estate. Such actions
can only be maintained by a party in the actual possession.
If the defendant was in possession, ejectment was the
remedy. We had introduced testimony tending to show
that the plaintiff had not been in possession since Hudson's

death.   the question of plaintiff's possession was one of the issues in the case. (*Stuyvesant* v. *Tompkins*, 9 Johns. 61; *Wickham* v. *Freeman*, 12 Johns. 183 : 2 Chitty's Pleadings, marginal page 202.)

*Hale & Craig*, for respondent.

The evident theory on which plaintiff's instruction is based is, that in actions to recover damages for trespass on real property it is essential to a right of recovery that plaintiff show, among other things, that at the commencement of the action he was in actual possession of the property trespassed upon.   We say this is the evident theory of the instruction, because it asserts this in legal effect; and though coupled with a statement of an adverse, actual, and peaceable possession of defendants, "for more than one month before the time" (commencement of suit), it is not perceived how the clause last quoted forms any essential qualification to the first clause of the instruction, relating to the defendants' "exclusive and peaceable possession of the ground in dispute" at the commencement of the action. The period "for more than one month" named has no relation to any period designated in the law as constituting a bar to the right of action in any supposable case, nor has it any relation, in the light of the pleadings and proofs in this case, to the time of the first trespass or entry of defendants upon the plaintiff's mining claim.   The plaintiff's pleading and proofs show that defendants first made their entry about April 21st, 1870, and the action was only commenced June 25th, 1870, or more than two months after defendants' first entry.   It follows, therefore, that unless this theory as stated, on which the instruction refused was based, is correct in law, the Court did not err in its refusal.

We do not reply to any citations of authority contained in appellants' brief on this point, since we are not able to procure a copy for the purpose; but we confidently assert

that there is no authority in ¦the law for such a rule as is asserted in this instruction. The true rule is correctly stated by Mr. CHITTY, thus (1 Ch. Pl., top. p. 174) : "The gist of the action (trespass *quare clausum fregit*) is the injury to the possession; and the general rule is, that unless at the time the injury was committed the plaintiff was in actual possession, trespass cannot be supported; and though the title may come in question, yet it is not essential to the action that it should." (See, also, id., top pp. 176, 177.)

From the last citation it appears the rule is held by Mr. CHITTY to be, that trespass may be maintained by a plaintiff against a defendant by whom he has been dispossessed, for the disseizin itself, but not for an injury after the disseizin, until he has regained possession. (See, also, *Stuyvesant* v. *Tompkins*, 9 Johns. 60 ; *Markham* v. *Freeman*, 12 Johns. 183; *Van Brunt* v. *Schenck*, 11 Johns. 385, 386.)

The rule as established by all the authorities seems to be not that plaintiff must show himself to have been in possession of the premises trespassed upon at the commencement of the action brought to recover damages therefor, as is asserted in defendants' requested instruction, but that he was in possession at the time of the trespass complained of, since the gist of the action is the injury to his possession; and the fact that the trespass from which the injury results is shown to be of so flagrant a nature as to work a disseizin of the plaintiff, constitutes no defense to the action, as asserted in said instruction, although, as it is sometimes held, the effect may be to limit the plaintiff's recovery in damages for the injuries sustained to the plaintiff's possession, or to such as accrued up to the time that such disseizin was fully accomplished. If, as we think, this is the true rule, there was no error in refusing the instruction.

By the COURT, BELCHER, J. :

This is an action to recover damages for certain trespasses alleged to have been committed upon the plaintiff's mining claim. The defendants deny the plaintiff's title to the claim, and set up title in themselves. It is admitted that the claim in dispute is a part of a larger claim, known as the Willow Bar claim, which formerly belonged to one James Hudson, under whom both parties claim title. To establish his own title, the plaintiff proved that in January, 1868, Hudson made a verbal sale of the claim to him, and in the August following placed him in possession of it, and that he then began to mine on the claim, and continued mining there until November, when he was stopped by high water. He also proved that in March, 1869, Hudson made and delivered to him a bill of sale, which reads as follows :

"MICHIGAN BLUFF, March 9th, 1869.

"This is to certify that on or about the 1st day of January, 1868, that I presented to and sold C. G. Myers, and on or about the 1st of July, 1868, did give the said C. G. Myers possession, by a verbal agreement, of a certain piece of ground; and, to avoid further trouble in regard to said claim, I do this day give him a clear bill of sale, defining the lines as before, thus : Commencing at an oak bush near the gate of Myers' cowyard, running straight across the river to the head of the wingdam put in by Owens & Co., in 1868 ; from thence to a prominent point of granite bedrock in El Dorado County ; from this line down to the old Willow Bar line ; to have and to hold the same, his heirs, assigns forever. The said C. G. Myers agrees to not back the water or interfere with the above ground in shape or manner belonging to me, and known as the Willow Bar claim.

"Witness my hand : JAMES HUDSON.

"Witness : ED. BLIFKA."

The defendants objected to this paper being received in evidence, on the ground that it appeared upon its face to be void for uncertainty, and to be a gift without consideration. The Court overruled the objection, and we think rightly. It is claimed that it is uncertain because it uses no words of conveyance, and because it does not state in what township, county, or State the property is situated. No precise form of words is necessary in a bill of sale. If it be clear that the maker intended to make a bill of sale, and to pass thereby the title to property, the law will, if possible, so construe the words used as to effectuate that intent. On looking at this paper, there can be no doubt that Hudson intended to make a bill of sale which would pass whatever title to the mining claim described still remained in him.

One of the points named in the description is in El Dorado County, and all of them, so far as we can see, may be well known monuments, easily found and distinguished.

If it was true that Hudson was giving away his mining claim, that fact furnished no ground for refusing to admit the bill of sale in evidence. He had the full right, so far as the Court could know at that stage of the case, to give it away, or do what he pleased with it.

To establish their title, the defendants proved that in November, 1868, Hudson made a mortgage upon the Willow Bar claim to secure a debt then owing by him; that on the 18th of April, 1869, he died, leaving a will, in which he directed his executors to sell all of his property and pay his debts; that the debt secured by mortgage was in due time presented to and allowed by the executors and the Probate Judge, and thereafter, upon an order of the Probate Court, the mortgaged property, including the property in dispute, was sold, and the proceeds of the sale applied to the payment of the mortgage debt, and that the defendants hold under the purchasers at this sale.

It is claimed for the defendants that the order of sale

made by the Probate Court was, in effect, a foreclosure of the mortgage, and that the purchasers thereunder took, by relation, the title which Hudson had at the date of the mortgage.

This position cannot be maintained. The Probate Court is not a Court of equity, and it has no power to foreclose a mortgage. Sales made under its orders pass only such title as the decedent had at the time of his death, and such as the estate may have subsequently acquired.

At the conclusion of the testimony, the defendants requested the Court to instruct the jury as follows :

"If the jury find that Hudson died in debt, and that before his death he gave away the ground in dispute to Myers by the paper offered in evidence, and received no consideration therefor, and should find that Hudson's property would not pay his debts without a sale of the ground in dispute, and that the ground in dispute was sold by Hudson's executors, of necessity, to pay the debts, then the sale by the executors carried the title, and Myers' paper did not give him any title. If the jury find that at the time this suit was commenced the defendants were in the exclusive and peaceable possession of the ground in dispute, and had been in such exclusive and peaceable possession for more than one month before that time, then this possession of the defendants precludes the plaintiff from bringing this form of action, and the jury must find for the defendants on the question of damages."

The Court refused to instruct as requested, and the refusal is assigned as error.

We see no error in the action of the Court in this respect. If the hypothetical facts stated in the first instruction—of which there is no evidence of the record—existed, they furnished ground for setting aside, in behalf of creditors, the conveyance to the plaintiff; but they furnish no ground for

the defendants, who are not creditors, nor in the place of creditors, to assail his title.

The second instruction was properly refused, because, if the plaintiff owned the ground in dispute, the first entry upon it by the defendants was unquestionably a trespass, for which an action would lie. The objection that if the defendants had remained in possession for a month or more after their first entry, the action must wholly fail, cannot, therefore, be maintained.

The other points made do not require special notice.

Judgment affirmed.

Mr. Chief Justice WALLACE did not express an opinion.